KOEHRING COMPANY, a Wisconsin Corporation, et al., Plaintiffs,

v.

Brock ADAMS, Secretary of Transportation, et al., Defendants.

No. 75-C-348.

United States District Court, E. D. Wisconsin.

June 14, 1978.

Michael, Best & Friedrich by Andrew O. Riteris, Milwaukee, Wis., for plaintiffs.

Joan F. Kessler, U. S. Atty. by Joseph P. Stadtmueller, Asst. U. S. Atty., Milwaukee, Wis., for defendants.

DECISION and ORDER

MYRON L. GORDON, District Judge.

This action is before me on the parties' cross motions for summary judgment and a set of stipulated facts. I have concluded that the plaintiffs' motion should be granted and that the defendants' motion should be denied.

The plaintiffs are seven manufacturers of mobile construction equipment. The defendants are the United States department of transportation, the secretary of the department of transportation, the national highway traffic safety administration (NHTSA), an agency of the department of transportation, and the administrator of the NHTSA. The plaintiffs seek a declaratory judgment that certain mobile construction equipment which they manufacture is not subject to the rulemaking authority vested in the defendants under the National Traffic and Motor Vehicle Safety Act of 1966, as amended, 15 U.S.C. § 1381 *et seq.* (the Act).

The Act was passed by Congress "to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents," and to promote this end, in part, by establishing motor vehicle safety standards for motor vehicles and equipment in interstate commerce. 15 U.S.C. § 1381. The Act empowers the secretary of the department of transportation to establish and enforce mandatory motor vehicle safety standards and to issue rules and regulations for the design of vehicles covered by the Act. 15 U.S.C. §§ 1392(a) and 1407. The secretary has delegated this authority to the NHTSA. 49 C.F.R. § 1.50.

The Act defines a motor vehicle safety standard as "a minimum standard for mo-

tor vehicle performance . . . ." 15 U.S.C. § 1391(2). Section 102(3) of the Act, 15 U.S.C. § 1391(3), defines a motor vehicle as:

" . . . any vehicle driven or drawn by mechanical power manufactured primarily for use on the public streets, roads, and highways, except any vehicle operated exclusively on a rail or rails." 15 U.S.C. § 1391(3).

Although no rule or regulation has been promulgated, since December, 1973, the NHTSA has interpreted § 102(3) of the Act to cover mobile construction equipment. This interpretation has appeared in opinion letters from the NHTSA to manufacturers inquiring about the Act's coverage. Such opinion letters have stated that "a motor vehicle is a vehicle which the manufacturer expects will use the public highway as part of its intended function." The opinion letters also included the following statement:

"[V]ehicles which use the highway on a necessary and recurring basis to move between work sites are motor vehicles. The primary function of some vehicles is of a mobile, work performing nature and as such their manufacturer contemplates a primary use of the highway. Mobile cranes, drill rigs, and towed equipment such as chippers and pull-type street sweepers are examples in this area. Even if the equipment uses highways infrequently, it is considered a motor vehicle."

The narrow issue for resolution in this case is whether mobile construction equipment is "manufactured primarily for use on the public streets, roads, and highways . . . ." so as to be covered by the motor vehicle safety standards and other rules and regulations of the NHTSA.

The construction equipment in question includes mobile cranes, mobile excavators, and mobile well drills. Typically, these machines are comprised of a rotatable superstructure, on which the boom or other working apparatus is mounted, and a base or carrier which makes the machine mobile. The machine's mobility is necessary both to enable the machine to change positions to move loads on the job site and to enable the machine to travel on public roads from job site to job site. The parties have stipulated that the typical item of construction equipment travels an estimated average of 2,100 to 2,200 miles per year under its own power on the public streets, roads, and highways, and spends a majority of its operation time on job sites which are off of the public streets, roads, and highways.

The defendants contend that the legislative history of the Act, the definition of the work "primarily," established principles of statutory construction, and the deference which must be shown to an agency interpretation of the Act support their position that mobile construction equipment is "manufactured primarily for use on the public streets, roads, and highways . . ." The plaintiffs dispute each of these contentions.

It is clear that Congress was aware that the Act's coverage was delimited in part by the definition of "motor vehicles." 1966 U.S.Code, Cong. & Admin.News, 2709, 2713, but the legislative history of the Act reveals no attention addressed specifically to the question whether mobile construction equipment was intended to be covered. An exchange between two members of the House Committee on Interstate and Foreign Commerce indicates only that race cars geared in such a way that they cannot be used on public highways were not intended to be covered. 112 Cong.Rec. 18890 (August 17, 1966). Senate Report No. 1301, 1966 U.S.Code, Cong. & Admin.News, 2709, 2713 makes particular mention of the problem of safe performance of passenger cars. However, I find nothing in these meager references to indicate a Congressional purpose either to include or exclude mobile construction vehicles from the Act's coverage.

The focus of the parties' debate centers around the definition of the word "primarily" as used in section 102(3). The plaintiffs argue that the common meaning of the word "primarily" is "of first importance," "chief," or "principal." If the word "primarily" as used in the statute is given its ordinary meaning, the plaintiffs urge, section 102(3) of the Act must be read to

exclude mobile construction equipment since a majority of its operational time is spent on the job site, and thus such equipment is not manufactured primarily for use on the public roads.

The defendants argue that a vehicle can be manufactured primarily for more than one function, so long as all such functions are "fundamental" or "essential." Thus, it is argued that the mobile construction equipment is manufactured primarily *both* for use on the public highways and for use on off-highway job sites.

The parties find support for their respective construction of the word "primarily" in decisions of the Supreme Court. The defendants rely on *Board of Governors v. Agnew,* 329 U.S. 441, 67 S.Ct. 411, 91 L.Ed. 408 (1947). In *Agnew,* the Supreme Court construed the word "primarily" as used in section 32 of the Banking Act of 1933, which prohibited any employee of a partnership "primarily engaged" in the underwriting or distribution of securities from serving simultaneously as director of a member bank of the Federal Reserve System. The court of appeals had found that a partnership of which certain member bank directors were employees was not "primarily engaged" in underwriting since the partnership's underwriting business did not exceed 50% of its total business. In the court of appeals' view, "primary" meant "first, chief, or principal." 329 U.S. at 446, 67 S.Ct. at 414.

The Supreme Court reversed, reasoning as follows:

"It is true that 'primary' when applied to a single subject often means first, chief, or principal. But that is not always the case. For other accepted and common meanings of 'primarily' are 'essentially' (Oxford English Dictionary) or 'fundamentally' (Webster's New International). An activity or function may be 'primary' in that sense if it is substantial. If the underwriting business of a firm is substantial, the firm is engaged in the underwriting business in a primary way, though by any quantitative test underwriting may not be its chief or principal activity. On the facts in this record we would find it hard to say that underwriting was not one primary activity of the firm and brokerage another. If 'primarily' is not used in the sense we suggest, then the firm is not 'primarily engaged' in any line of business though it specializes in at least two and does a substantial amount of each.

.    .    .    .    .

"But Congress did not go the whole way; it drew the line where the need was thought to be the greatest. And the line between substantial and unsubstantial seems to us to be the one indicated by the words 'primarily engaged.' "

The plaintiffs rely on *Malat v. Ridell,* 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966). In *Malat,* the Court construed § 1221(1) of the Internal Revenue Code of 1954, 26 U.S.C. § 1221(1), which provides in part that the term "capital asset" does not include "property held by the taxpayer *primarily* for sale to customers in the ordinary course of his trade or business." Distinguishing *Agnew,* the Court construed the word "primarily" to mean "of first importance" or "principally." 383 U.S. at 572, 86 S.Ct. 1030. The Court reasoned:

"As we have often said, 'the words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses.' .    .    . Departure from a literal reading of statutory language may, on occasion, be indicated by relevant internal evidence of the statute itself and necessary in order to effect the legislative purpose. See, *e. g., Board of Governors v. Agnew,* 329 U.S. 441, 446–448 [67 S.Ct. 411, 91 L.Ed. 408.] But this is not such an occasion. The purpose of the statutory provision with which we deal is to differentiate between the 'profits and losses arising from the everyday operation of a business' on the one hand .    .    . and the 'realization of appreciation in value accrued over a substantial period of time' on the other. .    .    . A literal reading of the statute is consistent with this legislative purpose. We hold that, as used in § 1221(1), 'primarily' means 'of first importance' or

'principally.'" 383 U.S. at 571–572, 86 S.Ct. at 1032. (citations omitted).

The defendants argue that *Agnew* rather than *Malat* should control the construction of section 102(3) of the Act. *Malat* is a case involving the construction of a revenue-raising provision. The defendants point out that the statute at issue in this case, on the other hand, is remedial by nature and thus should be construed liberally to advance the remedy and suppress the evil addressed by the legislation. *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); 3 Sutherland, Statutory Construction (4th ed.) § 60.01. It is urged that the remedial purpose of the Act—the reduction of accidents, injuries and deaths on public highways—will be furthered by construing the Act to cover the plaintiffs' vehicles.

If the court were able to construe the term "primarily" to mean "essentially" or "fundamentally," the plaintiffs' equipment would be motor vehicles within the meaning of the Act. That result would be consistent with many of the plaintiffs' sales brochures and vehicle specifications. Common to all of the mobile construction equipment in question is the feature of rubber tires, a requirement for vehicular travel in most jurisdictions. Also, many of the items of mobile construction equipment are described in the plaintiffs' promotional literature as having the capability of traveling at highway speeds and as conforming to government regulation for vehicle width, lighting, and other design features required for public road travel.

Nevertheless, the statutory language must be strained, in my opinion, to reach the view proposed by the defendants. The plain and ordinary meaning of the word "primarily" is "first" or "foremost." The fact that the statute is remedial by nature does not justify erasing a line Congress has clearly drawn. The record here is clear that the operation of these vehicles on public highways is decidedly an incidental activity. The greater percentage of these vehicles' operation is on off-highway construction sites rather than on public roads. I find no reasonable justification to stretch the term "primarily for use" on the high-

ways to mean "sporadic" or "incidental" use on the highways.

In my judgment, the record demonstrates that use on public highways is not the primary purpose for which the plaintiffs' mobile construction equipment was designed. Accordingly, the plaintiffs' mobile construction equipment does not constitute "motor vehicles" within the meaning of 15 U.S.C. § 1391(3), and the defendants' regulatory efforts with respect to such equipment are not authorized under the Act. Therefore, summary judgment will be granted to the plaintiffs.

Therefore, IT IS ORDERED that the plaintiffs' motion for summary judgment be and hereby is granted. It is hereby declared that mobile construction equipment which is designed to perform work on a construction site and which normally uses the public streets, roads or ways only for travel between job sites, is not a vehicle which has been manufactured primarily for use on public streets, roads and highways, and that therefore Congress has not delegated rulemaking authority to the defendants in respect to such equipment.

IT IS ALSO ORDERED that the defendants' motion for summary judgment be and hereby is denied.