Paul L. WIPPERFURTH, Respondent,

v.

U-HAUL COMPANY OF WESTERN WISCONSIN, INC.,
Appellant.†

Court of Appeals

*No. 80–144. Submitted on briefs June 30, 1980.—
Decided August 26, 1980.*
(Also reported in 297 N.W.2d 65.)

For the appellant the cause was submitted on the
briefs of *Andrew O. Riteris, Ellen E. Sward* and *Michael,
Best & Friedrich* of Madison.

For the respondent the cause was submitted on the
brief of *James S. Grodin, Gerald M. Schwartz* and *Gro-
din & Grodin* of Milwaukee.

† Petition to review granted.

Before, Donlin, P.J., Foley, J., and Dean, J.

DONLIN, P.J. Paul Wipperfurth and U-Haul Company of Western Wisconsin, Inc., entered into a dealership contract on September 17, 1969. The contract provided that Wipperfurth was to use his service station as a "dispatching and receiving location" for the rental of U-Haul trucks. In return, he received a five percent commission on all rentals made from his station. The agreement continued until May 2, 1978, when Wipperfurth received a thirty-day notice of U-Haul's termination of the contract. Although the thirty-day notice was not sufficient to comply with the Wisconsin Fair Dealership Law (WFDL),[1] it did satisfy the terms of the 1969 contract between the parties.

After notice of termination, Wipperfurth commenced this action to enjoin U-Haul from terminating the contract, alleging U-Haul had not complied with several provisions of the WFDL. Wipperfurth had not received ninety days' notice of termination with the requisite sixty days in which to correct any deficiencies.[2] In ad-

---

[1] Section 135.04, Stats. (1977) provides:

**Notice of termination or change in dealership.** Except as provided in this section, a grantor shall provide a dealer at least 90 days' prior written notice of termination, cancellation, nonrenewal or substantial change in competitive circumstances. The notice shall state all the reasons for termination, cancellation, nonrenewal or substantial change in competitive circumstances and shall provide that the dealer has 60 days in which to rectify any claimed deficiency. If the deficiency is rectified within 60 days the notice shall be void. The notice provisions of this section shall not apply if the reason for termination, cancellation or nonrenewal is insolvency, the occurrence of an assignment for the benefit of creditors or bankruptcy. If the reason for termination, cancellation, nonrenewal or substantial change in competitive circumstances is nonpayment of sums due under the dealership, the dealer shall be entitled to written notice of such default, and shall have 10 days in which to remedy such default from the date of delivery or posting of such notice.

[2] *Id.*

dition, the WFDL requires that before a dealership may be terminated, the grantor must show good cause.[3] Wipperfurth alleges that U-Haul's termination of his contract contravenes this section.

U-Haul argues that because the contract between the parties was entered into prior to the passage of the WFDL, its requirements are inapplicable. Ruling in favor of Wipperfurth, the trial court enjoined U-Haul from terminating the dealership. The primary question on appeal concerns the retroactive application of the WFDL. Because we conclude that the WFDL cannot be applied to contracts entered into prior to its passage, we reverse.

The applicable section of the WFDL, sec. 135.03, Stats., provides:

No grantor, directly or through any officer, agent or employe, may terminate, cancel, fail to renew or substantially change the competitive circumstances of a dealership agreement without good cause. The burden of proving good cause is on the grantor.

The language of the WFDL itself does not address the question of its retroactive application. Wipperfurth maintains, however, that the history of the WFDL demonstrates the legislature's intent to apply it to agreements entered into prior to its original passage in 1974.

In the original act, the legislature provided that it apply to "dealership agreement[s] entered into after April 5, 1974."[4] With the passage of the amendment in 1977, the words "after April 5, 1974," were deleted.[5] This de-

---

[3] Section 135.03, Stats.

[4] Section 135.03, Stats. (1975) provides:

**Cancellation and alteration of dealerships.** No grantor, directly or through any officer, agent or employe may terminate, cancel, fail to renew or substantially change the competitive circumstances of a dealership agreement entered into after April 5, 1974 without good cause. The burden of proving good cause shall be on the grantor.

[5] Chapter 171, §1, 1977 Wis. Laws.

letion forms the basis for Wipperfurth's contention that the legislature intended the act to be retroactive.

Because it is not clear from its language whether the act is to be applied to pre-1974 contracts, it is permissible to look beyond the face of the statute to its legislative history.[6] In this instance the legislative history is also ambiguous since it could support both Wipperfurth and U-Haul's positions.

The 1977 amendment to ch. 135 effected several changes that could support Wipperfurth's contention. It eliminated the explicit prospective provision of sec. 135.-03, and created sec. 135.025, stating the purpose of the act. As created, sec. 135.025 does not include any language that specifically limits WFDL's coverage only to contracts entered into after 1974.[7] The amendment would seem to indicate that the legislature intended the act to cover pre-1974 agreements. Moreover, since the purpose clause states that the act intends to give deal-

---

[6] *Estate of Ries,* 259 Wis. 453, 49 N.W.2d 483 (1951).

[7] Section 135.025, Stats. provides:

**135.025 Purposes; rules of construction; variation by contract.** (1) This chapter shall be liberally construed and applied to promote its underlying remedial purposes and policies.

(2) The underlying purposes and policies of this chapter are:

(a) To promote the compelling interest of the public in fair business relations between dealers and grantors, and in the continuation of dealerships on a fair basis;

(b) To protect dealers against unfair treatment by grantors, who inherently have superior economic power and superior bargaining power in the negotiation of dealerships;

(c) To provide dealers with rights and remedies in addition to those existing by contract or common law;

(d) To govern all dealerships, including any renewals or amendments, to the full extent consistent with the constitutions of this state and the United States.

(3) The effect of this chapter may not be varied by contract or agreement. Any contract or agreement purporting to do so is void and unenforceable to that extent only.

ers remedies in addition to contractual ones, it would seem to sustain Wipperfurth's view.[8]

Additional support for Wipperfurth's view is provided by a letter from William Nelson[9] to Representative Thomas Hauke in which he comments on the then proposed amendment:

If, indeed, Chapter 135 is a remedial statute that has caused considerable protection to have been extended to independent small Wisconsin businessmen, it is difficult to imagine a rationale that would limit that protection to new small businesses and deny it to old businesses. The statute as amended to delete that language would not require retroactive interpretation, as has often been contended, but would indeed rather only permit the trial court to determine what application could constitutionally be given to the law on a case-by-case basis. It would seem to me that this would maximize fairness to all concerned.[10]

This demonstrates that at least one person, although not a legislator, believed that the WFDL would have some retroactive applicability. Because the intent of one individual cannot be imputed to the whole legislature, the value of Nelson's letter is minimal.[11]

Conversely, the legislative history also supplies support for the view that the WFDL was not meant to be retroactive. In 1974, the legislature specifically provided that the "good cause" requirement of sec. 135.03 was to be prospective only. This legislative direction, however, was not included in the notice provision of sec. 135.04. In 1977, the legislature may have simply been

[8] Section 135.025(2)(c), Stats.

[9] The court takes judicial notice that, during the 1975 and 1977 legislative sessions, Nelson was registered with the Secretary of State pursuant to §1364, Stats., as a lobbyist for the Wisconsin Independent Dealer's Association, Inc.

[10] Letter from William Nelson to Thomas Hauke (Sept. 9, 1977).

[11] *Moorman Mfg. Co. v. Industrial Comm'n*, 241 Wis. 200, 5 N.W.2d 743 (1942).

correcting a drafting oversight by eliminating the specific provision governing only sec. 135.03 and creating a new section, sec. 135.025, to govern the whole chapter. Arguably, section 135.025 directs that the whole of ch. 135 should be applied prospectively only.

The wording of sec. 135.025 itself supports the contention that the chapter is to be applied only to agreements entered into after 1974. The section specifically provides that any renewals or amendments of existing contracts are to be covered by the WFDL. This suggests that a major concern of the legislature was a fear that because an original agreement between a grantor and dealer was entered into prior to 1974, amendments to the agreement subsequent to the act's creation would escape coverage. If the legislature intended the act to be retroactive, the specific direction to cover renewals and amendments of contracts would have been unnecessary, since the original contract would be within the terms of ch. 135.

Finally, sec. 135.025 (3) states that "[t]he effect of this chapter may not be varied by contract or agreement. Any contract or agreement purporting to do so is void and unenforceable to that extent only." These words indicate a legislative belief that the WFDL would have only prospective application. If no statute were in existence at the time of the contract, it would be impossible to "purport" to vary the effect of the chapter.[12]

Arguably, sec. 135.025, by its language, anticipates only prospective application of the WFDL. This interpretation must be counterbalanced by the portion of the amendment deleting the effective date language from sec. 135.03. Therefore, the legislative history produces an unclear answer to the question concerning the legislative intent regarding retroactive application.

---

[12] *See H. Phillips Co. v. Brown-Forman Distillers*, 483 F. Supp. 1289 (W.D. Wis. 1980).

Generally, when a statute is unclear in regard to its prospective or retroactive operation, the basic rules of statutory construction dictate a prospective application only.[13] This conclusion is especially proper in this instance, since any other interpretation raises serious constitutional objections.

One of the most fundamental rules of statutory construction requires the court to not only construe a statute to avoid any construction that renders the statute unconstitutional, but also to construe the statute to dispel any serious doubts concerning its constitutionality.[14] The legislature imposed the same limitation upon the court in delineating the chapter's coverage, "[t]o govern all dealerships, including any renewals or amendments, to the full extent consistent with the constitutions of this state and the United States."[15] If the act in the instant case were to be given retroactive application, the contract clause of both the United States and Wisconsin Constitutions[16] would raise the possibility of its unconstitutionality.[17]

As the trial court found, the act alters a fundamental aspect of the contract between U-Haul and Wipperfurth. It establishes limited grounds for termination of a contract entered into prior to the WFDL's enactment. If the act is in the public interest, the state's police power is broad enough to authorize such limitations on contracts entered into after its passage.[18] A higher standard, however, must be met if the act alters rights and

[13] *Swanke v. Oneida County*, 265 Wis. 92, 60 N.W.2d 756 (1953).

[14] *Lewis Realty, Inc. v. Wisconsin Real Estate Brokers' Bd.*, 6 Wis.2d 99, 94 N.W.2d 238 (1959); *Swanke, supra* note 13.

[15] Section 135.025(2)(d), Stats.

[16] U. S. CONST. art. I, §10, cl. 1; WIS. CONST. art. I, §12.

[17] *H. Phillips Co., supra* note 12.

[18] *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934).

obligations of existing contracts.[19] The United States Supreme Court has established a five-factor test against which to measure any statute impairing an existing contract: (1) an emergency or at least compelling need for the statute must exist; (2) the statute should be addressed to a legitimate end; (3) the relief provided by the statute must be appropriate to the need; (4) the conditions imposed by the statute cannot be unreasonable; and (5) the legislation must be temporary in nature.[20]

The first four factors could arguably be met by the WFDL. But if the legislature, having initially made the WFDL prospective, only later decided the act should be retroactive, any contention that a compelling need or emergency existed in 1974 loses credibility. In reviewing the same act, another court noted, "[a] hesitant and tardy legislative decision that severe impairment of the obligations of contract was a necessity would be somewhat less impressive than a firm and prompt decision that such necessity existed."[21] Moreover, the relief provided by the WFDL is of an indefinite nature so that the fifth factor of the Supreme Court's test remains unsatisfied.

■

Since a serious question concerning the act's constitutionality would arise if the WFDL were given retroactive application, the court must conclude that the act covers only agreements entered into after April 5, 1974. This conclusion is supported by the ambiguity in the language of the act and the legislative history, which do not make explicit a requirement to apply the WFDL retroactively. Therefore, the general rule of the prospective operation of statutes applies in this case.

*By the Court.*—Judgment reversed.

---

[19] *Id.*

[20] *Home Building & Loan, supra* note 18.

[21] *H. Phillips Co., supra* note 12, at 1296.