E. A. DICKINSON & ASSOCIATES, INC., Plaintiff,

v.

SIMPSON ELECTRIC COMPANY, Defendant.

Civ. A. No. 80–C–991.

United States District Court, E. D. Wisconsin.

March 24, 1981.

Albert C. Elser, II, Prieve, Meyer & Elser, S. C., Milwaukee, Wis., for plaintiff.

Andrew O. Riteris, Milwaukee, Wis., for defendant; Michael, Best & Friedrich, Milwaukee, Wis., and Quinn, Jacobs & Barry, Chicago, Ill., of counsel.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action for damages and injunctive relief brought pursuant to the Wisconsin Fair Dealership Law, Ch. 135, Wis.Stats.

The plaintiff E. A. Dickinson & Associates, Inc. ("Dickinson") is a Wisconsin corporation which is a manufacturer's representative for manufacturers of electrical equipment. The defendant Simpson Elec-

tric Company ("Simpson") is an Illinois corporation engaged in the manufacture of electronic panel meters and test equipment for sale to original equipment manufacturers ("OEM's") and distributors. Effective July 1, 1980, Simpson terminated its relationship with Dickinson. On October 27, 1980, Dickinson filed suit under Ch. 135, Wis.Stats., seeking injunctive relief to prohibit the termination and damages. The defendant has answered denying that plaintiff is a dealership within the meaning of Ch. 135 and alleging that even if plaintiff is deemed to be a dealership, Ch. 135 cannot be applied retroactively to govern the agreement between the parties. There is no dispute that if the plaintiff is entitled to the protection of Ch. 135, the procedural prerequisites to termination of a dealership were not followed by the defendant.

The plaintiff's motion for preliminary injunctive relief was heard on November 26, 1980, and was denied for the reasons stated at that time. This decision sets forth in greater detail the basis for the Court's ruling on the plaintiff's motion.

### FINDINGS OF FACT

The plaintiff and its president Mr. E. A. Dickinson have been engaged in the business of sales representation of manufacturers of electrical equipment since 1948. As a manufacturer's representative, the plaintiff promotes the sale of electrical equipment by finding potential customers and encouraging existing customers to place orders with the manufacturers whom plaintiff represents. Plaintiff's president is a graduate engineer and thus is able to, and does, render application engineering services to potential customers who are contemplating the use of a manufacturer's products.

In 1956 the plaintiff and the defendant entered into an oral agreement that the plaintiff would serve as the exclusive manufacturer's representative of the defendant in the geographical area consisting of most of the State of Wisconsin. The plaintiff paid no franchise fee and it made no equipment investment in undertaking that representation.

During the time of the plaintiff's representation of the defendant, which lasted from 1956 through June 1980, the counties in the State of Wisconsin that were within the plaintiff's area of representation varied slightly from time to time but plaintiff's territory at all times covered most of the state. The plaintiff was compensated by payment from the defendant of a commission on defendant's sales of its equipment to original equipment manufacturers and to distributors within plaintiff's territory. The rate of commission varied from time to time during the course of the parties' relationship, and it also varied depending upon whether a sale was to an OEM or to a distributor.

The plaintiff was the defendant's first factory representative in Wisconsin. In 1956 the defendant had a few customer accounts but virtually no sales volume in Wisconsin. As of June 1980, the defendant had a sales volume of approximately $350,-000 per year in Wisconsin. The plaintiff was in large part responsible for building up the defendant's sales volume in Wisconsin during the period from 1956 through June 1980. As of June 1980, the plaintiff, in addition to representing the defendant, also represented six other manufacturers of electrical equipment. Commissions from the defendant accounted for approximately 11 to 15% of the plaintiff's income.

Approximately 60% of the defendant's sales in the plaintiff's territory are direct sales from a distributor to a customer. In those cases the distributor buys products from the defendant, takes title to them, sells from inventory, and is responsible for collection of the purchase price. Of the other 40% of sales, which are to OEM's, in about half the sales the orders are placed directly by the OEM with the defendant and in the other half the orders are relayed through the plaintiff to the defendant. In no case does the plaintiff take title to the manufactured product or undertake collection of the purchase price. Price quotations are also prepared by the defendant, although occasionally the plaintiff may relay a quotation to an OEM and occasionally it

may review a quotation. All invoicing is done from the defendant's home office.

In order to promote the products which it represents, the plaintiff from time to time attends trade shows at its own expense and maintains a booth or display area under its own name at which it displays samples and promotional material from all of the manufacturers whom it represents. The manufacturers provide plaintiff with promotional material for that purpose and for use in dealing with potential customers.

The plaintiff's stationery and business cards bear its own name and not the defendant's name. Plaintiff's sales literature shows all of the manufacturers' lines which it carries. Plaintiff maintains a listing under its own name in the Milwaukee yellow pages. It is also listed under the defendant's name under the designation of factory representative. Also listed under the defendant's name are several other firms which are designated as distributors.

The plaintiff does not perform servicing or other warranty work on the defendant's products, but it does on occasion refer customers who bring complaints to its attention either to Simpson's home office or to E–M Instruments, a Milwaukee company which does do warranty work for Simpson.

The plaintiff does not purchase goods from Simpson for primary use in resale to customers and does not maintain an inventory in the sense of a stock of goods for resale. Plaintiff does keep a small supply of defendant's products on hand for promotional and demonstration purposes. Under an arrangement which it had with defendant, plaintiff would purchase the products outright at a discount of 50% off list price, and subsequently it would either return the products to Simpson within sixty days for a full refund or credit or it would sell the products at a discount to promote good relations with a present or potential customer. As of June 1980, plaintiff's "inventory" of defendant's products had a value of approximately $500 to $1,000.

In a letter dated June 4, 1974, the defendant's director of sales, Mr. Mel Buehring, wrote to plaintiff's president, stating as follows:

"Dear Ed,

"Several years ago, Simpson Electric Company established the SIP product line and later appointed exclusive instrument-oriented representatives to market these products primarily to industrial and OEM customers. The expected deeper penetration of the instrument market due to the efforts of a specialized sales force did not materialize. Since this program was not successful, we feel it no longer warrants maintaining the dual representative system.

"Effective July 1, 1974, we will incorporate the SIP products into our standard product line and discontinue marketing through separate instrument representatives. We are happy to announce that effective this same date, Simpson Electric Company is appointing your organization as the exclusive representative for SIP products in your designated marketing territory. We're glad to have you back.

"During the next few weeks, you will receive updated prices and other information on all instrument products. We hope that you will take time to motivate your sales force into approaching this challenge with new vigor and enthusiasm. We need your help to successfully implement this change and gain the expected benefits for you as well as for Simpson Electric. Give these products their deserved attention and you may be surprised with the pleasant results. Best of luck and more sales." (Exhibit 5 from the November 26, 1980, hearing.)

The SIP line was a line of specialized equipment for laboratory use. It did not constitute a substantial addition to the plaintiff's line of Simpson products. The line never sold well and was eventually in part discontinued and in part merged into Simpson's regular line of products. Defendant's product line which plaintiff carried had varied on other occasions, and the addition of the SIP line was not an uncommon type of event in the history of the relationship between the parties.

On May 27, 1980, Mr. Buehring again wrote to Mr. Dickinson to notify him that effective July 1, 1980, Simpson was discontinuing Dickinson as its Wisconsin representative, allegedly because of dissatisfaction with the growth rate of sales in Wisconsin during the several preceding years. Mr. Dickinson protested the termination by telephone on May 28, 1980, but his protest was to no avail and Dickinson was terminated as of July 1, 1980, with commissions to be paid on orders placed through September 1980.

Simpson manufactures a high quality product which it will be difficult, if not impossible, for Dickinson to replace. The Simpson line is a prestige line in the electrical industry, and its loss will therefore result not only in monetary damage to the plaintiff in terms of commissions lost but also in damage to the plaintiff's reputation as a promoter of high quality electrical products.

## DEALERSHIPS, CH. 135, WISCONSIN STATUTES

■ The Wisconsin Fair Dealership Law prohibits the termination of dealerships without good cause. A dealership is defined in § 135.02(2), Wis.Stats.:

> "'Dealership' means a contract or agreement, either expressed or implied, whether oral or written, between 2 or more persons, by which a person is granted the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol, in which there is a community of interest in the business of offering, selling or distributing goods or services at wholesale, retail, by lease, agreement or otherwise."

"Community of interest" is defined as "a continuing financial interest between the grantor and grantee in either the operation of the dealership business or the marketing of such goods or services." § 135.02(4), Wis.Stats. The plaintiff's argument is that it was granted the right by the defendant to sell or distribute the defendant's goods, that it was granted the right to use the defendant's commercial symbols, and that it and the defendant had a community of interest in the business of selling the defendant's goods.

On the last point, reading the words of the statute to have their common meaning, *Addison v. Holly Hill Fruit Products, Inc.*, 322 U.S. 607, 618, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1943); *White Hen Pantry v. Buttke*, 98 Wis.2d 119, 295 N.W.2d 763 (1980), there is little doubt that the parties did have a community of interest in the business of selling the defendant's goods since the defendant, naturally, was in business to make money by selling its products, and the plaintiff received compensation in the form of commissions when the defendant did sell a product within plaintiff's territory and therefore had a continuing financial interest in the marketing of the products. See *Wilburn v. Jack Cartwright, Incorporated*, C.A.No. 79–C–338 (unpublished decision, E.D.Wis., Nov. 12, 1979) (Gordon, J.). Also the parties had a relationship of twenty-five years' standing, plaintiff was the defendant's sole factory representative throughout most of the State of Wisconsin during that whole time, and plaintiff was instrumental in building up the defendant's sales volume during that period from practically nothing to well over a quarter of a million dollars annually. Thus, under a reasonable construction of the statutory language, the parties also both had a continuing financial interest in the operation of the plaintiff's business. *H. Phillips Co., Inc. v. Brown-Forman Distillers Corporation*, 483 F.Supp. 1289, 1292 (W.D.Wis.1980).

In addition to the community of interest, however, the statute requires either that the plaintiff was granted the right by the defendant to sell or distribute the defendant's goods or that the plaintiff was granted the right to use the defendant's commercial symbols. The Court finds that the plaintiff in this case was granted neither right by the defendant and, therefore, that the plaintiff was not a "dealership" within the meaning of Ch. 135.

"Sell" means:

"1. to give up, deliver, or exchange (goods, services, etc.) for money or its equivalent; part with for a price. 2. to make a practice of offering or stocking for sale; * * *." Webster's New World Dictionary, College Edition (1968).

A "distributor" is "an agent or business firm that distributes goods to consumers." *Ibid.* The plaintiff does not sell the defendant's goods although it does promote the sale of the goods. Plaintiff does not take title to or possession of goods from the defendant, it does not deliver goods from itself or from the defendant to a third party, and it does not exchange goods for a price with any third party. Rather, plaintiff is paid for its promotional services by the defendant, and the value of the services is measured by a percentage of the price of goods sold by the defendant itself. Nor does the plaintiff distribute goods since it has none in its possession. See *Samco, Inc. v. Keystone Lighting Corporation,* 284 N.W.2d 122 (Wis.Ct.App., Dist. I, 1979); *Foerster, Inc. v. Atlas Metal Parts Company,* (unpublished decision, Waukesha Co. Cir. Ct., Dec. 6, 1978).

I am aware of the decision in *Al Bishop Agency, Inc. v. Lithonia-Division of National Service Industries, Inc.,* 474 F.Supp. 828, 832 (E.D.Wis.1979), finding that the plaintiff, which was a manufacturer's representative, was a dealership within the meaning of Ch. 135, Wis.Stats.:

"* * * the Court is drawn to the conclusion that plaintiff is a dealership as defined in section 135.02(2). First, as indicated earlier, plaintiff does more than just represent defendant's products, it is instead involved in the actual solicitation of offers to purchase. While the evidence shows that plaintiff neither bills customers nor otherwise handles the products sold, these services generally being handled by a distributor, it is clear that plaintiff is involved in the solicitation of actual sales on a one-to-one basis. Second, plaintiff's business is closely entwined with that of defendant. Once the sales are made, plaintiff performs customer service functions by making certain the eventual purchaser is satisfied. Furthermore, plaintiff holds itself out as an agent for defendant by having defendant's name on its business cards and by being well-known as an agent for defendant.

"Taking the relationship between plaintiff and defendant and the extensive functions performed by plaintiff into consideration, this Court is of the opinion that plaintiff is a dealer within the meaning of chapter 135. * * *"

See also *Summit Corporation v. Cleveland Cutter & Reamer, Inc.,* No. 78–B1–0479 (unpublished decision, Ozaukee Co. Cir. Ct., Branch 1, Oct. 5, 1979). This case is distinguishable from both the cases just cited since in this case the plaintiff, except for being involved in the one-to-one solicitation of sales, does not perform extensive additional functions for the defendant. It does not perform customer service or warranty work, or use defendant's name on its business cards or stationery, or hold itself out as an agent for defendant except in the traditional sense of being an independent manufacturer's representative for defendant and for six other manufacturers. Furthermore, even in the case of a remedial statute, the Court must look to the language of the statute as its primary source of interpretation, *Koehring Company v. Adams,* 452 F.Supp. 635, 638 (E.D.Wis.1978), aff'd 605 F.2d 280 (7th Cir. 1979); *White Hen Pantry v. Buttke,* supra, 98 Wis.2d at 122, 295 N.W.2d 763, and the performance of additional service-type functions by a manufacturer's representative does not suffice to bring one which neither sells nor distributes goods within the meaning of that phrase in § 135.02(2), Wis.Stats.

I am also satisfied that the plaintiff does not "use" the defendant's commercial symbols in the manner intended by the statute. (But cf. *Wilburn v. Jack Cartwright, Incorporated,* C.A. No. 79–C–338 (unpublished decision, E.D.Wis., Nov. 12, 1979) (Gordon, J.).) The plaintiff in its own sales literature lists the defendant along with the six other manufacturers whom it represents, it displays promotional materials of the defendants along with materials of the six

other manufacturers at trade shows, and it is listed as a factory representative under the defendant's name in the Milwaukee yellow pages. It also, however, maintains a separate listing in the telephone book, uses its own name on stationery and business cards, appears under its own name at trade shows, and, in sum, makes clear to all that it is an independent operation and that the defendant is only one of many manufacturers whose products it promotes. The plaintiff is neither a franchisee nor an agent of the defendant, and it has not been "granted the right * * * to use * * *" the defendant's trademark, advertising, or other commercial symbols in the sense of adopting the trademark or symbols as its own.

Finally, I am satisfied that the construction of § 135.02(2) set forth above comports with the legislative intent. In construing a statutory section, the section under consideration and related sections are to be considered together, and any single word or phrase should be looked at in light of the whole statute. *White Hen Pantry v. Buttke,* supra, 98 Wis.2d at 122, 295 N.W.2d 763. Section 135.045 of the Wisconsin Fair Dealership Law requires that upon termination of a dealership, the grantor must offer to repurchase "all inventories sold by the grantor to the dealer for resale under the dealership agreement." Section 135.04 provides for notice of default and a remedial period in the event termination is due to "nonpayment [by the grantee] of sums due under the dealership." Thus, the statute in its entirety contemplates a financial agreement between the parties in the form of purchase and resale to third parties by the grantee of the grantor's products in exchange for the right of the grantee to hold itself out as one who acts for the grantor, i. e., as a nonindependent affiliate of the grantor. There is no question in this case that the plaintiff is in fact independent of the defendant and that it publicly maintains a position of independence. It performs the commonly understood functions of an independent factory representative and no others and is in my opinion not within the class of dealers for whose protection the Wisconsin Fair Dealership Law was enacted.

## RETROACTIVITY

█ Ch. 135, Wis.Stats., was enacted effective April 5, 1974, to govern all dealership agreements entered into after its effective date. § 135.03, Wis.Stats. (1975). In 1977, § 135.03 was amended to delete the words "entered into after the effective date of this act," and at the same time § 135.025 was added to the statute. Subsection (2)(d) of that section provides that the Act shall govern "all dealerships, including any renewals or amendments, to the full extent consistent with the constitutions of this state and the United States." As a result of the 1977 amendments, the issue arises whether application of Ch. 135 to dealerships which predate the effective date of the Act would constitute an impermissible impairment of contract in violation of Art. 1, § 10, Cl. 1, of the United States Constitution.

The federal district courts which have considered the question have not reached consistent results. In *Paul Reilly Company, Inc. v. Dynaforce Corporation,* 449 F.Supp. 1033, 1035 (E.D.Wis.1978), and *Tucker Company, Inc. v. Energy Absorption Systems, Inc.,* C.A.No. 77–C–776 (unpublished decision, E.D.Wis., Dec. 12, 1977), Judges Gordon and Warren, respectively, decided that a retroactive application of Ch. 135 would not violate the contract clause in the Constitution. In *H. Phillips Co., Inc. v. Brown-Forman Distillers Corporation,* 483 F.Supp. 1289 (W.D.Wis.1980), and *Jay-Mar, Inc. v. International Paper Company,* C.A. No. 79–C–359 (unpublished decision, W.D.Wis., Sept. 4, 1980), Judges Doyle and Crabb, respectively, concluded that, at the least, there was a sufficiently serious constitutional question with regard to retroactive application to preclude the court from finding a likelihood of success on the merits, which is a prerequisite to preliminary injunctive relief. On August 26, 1980, the Wisconsin Court of Appeals concluded that Ch. 135 should not be given retroactive application and "covers only agreements entered into after April 5, 1974." *Wipper-*

*furth v. U-Haul Company of Western Wisconsin, Inc.,* 98 Wis.2d 516, 523, 297 N.W.2d 65 (1980). Published decisions of the Wisconsin Court of Appeals have statewide binding precedential effect. Section 752.-41(2), Wis.Stats. Since this court has subject matter jurisdiction over this action only in diversity, it is obliged to follow the substantive law of the State of Wisconsin and, therefore, must conclude that even were Dickinson a dealership within the meaning of § 135.02(2), Wis.Stats., it is not protected by the Act from termination of its oral agreement entered into with Simpson in 1956.

Dickinson argues that the June 4, 1974, letter from Mr. Buehring to Mr. Dickinson, which is set forth above in the findings of fact and which involves the addition of the SIP product line to the defendant's line of products promoted by Dickinson, constituted a new contract between the parties. If a contract is renewed or amended after the effective date of the Act, or a new contract is entered into, that contract is governed by the Act. *Reinders Brothers, Inc. v. Rain Bird Eastern Sales Corporation,* 627 F.2d 44, 49 (7th Cir. 1980). The June 4, 1974, letter was not, however, a new contract or an amendment to the existing contract. It was instead notification of a routine modification in defendant's product line which was available to the plaintiff for promotion. It was anticipated by the parties in 1956 at the time of their oral agreement that such changes would occur from time to time, and in the course of their twenty-five years of dealings a number of such modifications did occur. Each time such a change was made, it did not constitute a renewal or amendment of the contract existing between the parties. Thus, the June 4, 1974, letter does not justify application of Ch. 135 to the relationship between the parties.

## CONCLUSIONS OF LAW

In order to prevail on a motion for preliminary injunctive relief, the plaintiff must demonstrate, inter alia, "at least a reasonable likelihood of success on the merits." *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.,* 545 F.2d 1096, 1097 (7th Cir. 1976).

In this case the plaintiff was a manufacturer's representative and not a dealership within the meaning of § 135.02(2), Wis. Stats. Plaintiff neither sold nor distributed defendant's products, and it did not use defendants' trademark, advertising, or other commercial symbols in the manner intended to be covered by the statute.

Even were plaintiff likely to be found to be a dealership, however, its contract with the defendant was entered into in 1956, which predates the effective date of the Wisconsin Fair Dealership Law, and the contract was not amended or otherwise renewed subsequent to the effective date of the Act. Ch. 135 does not have retroactive application, and, therefore, plaintiff has not demonstrated a reasonable likelihood of success on the issue of its entitlement to the protections of Ch. 135.

## ORDER

For the foregoing reasons,

IT IS ORDERED that the motion of the plaintiff E. A. Dickinson & Associates, Inc., for a preliminary injunction is denied.

IT IS FURTHER ORDERED that in sixty days judgment will be entered dismissing this action on its merits with costs to the defendant unless before that time the plaintiff or the defendant serves and files with the court its written demand for trial along with a list of its prospective witnesses and a brief summary of what the substance of their testimony will be.